The bond, (or note under seal), was executed by the defendant (417) and others, was payable jointly and severally to H. B. Judd or order, on the 25th December, 1861, in the sum of three hundred dollars. There were several credits entered on the note, and it was not endorsed by the payer.
The defense relied on was that the plaintiff was not the owner of the note.
The plaintiff, for himself testified, that the note was his property; and explained his possession of the same on his cross-examination, thus: That his uncle, Henderson Judd, now dead, was the owner of the note. In 1871, the year he died, he handed the note to the plaintiff and told him to take the note to pay a debt out of it, for which he was liable as surety for Dr. Judd, to a daughter of the defendant, in the sum of sixty dollars, and the note should be mine. He took the note and saw the defendant in order to effect the arrangement through him. This was done by the defendant's executing his individual note to his daughter for sixty dollars and receiving from her the note upon which his uncle was liable as surety. The defendant surrendered the same to him and *Page 318 
he gave him credit for the amount upon the note now in suit. This credit is endorsed $60.00, 4th February, 1871. Plaintiff further stated, that he was not to have the credit put on, and then to return the note; it was to be his.
For the defendant Col. A. A. F. Seawell was called, who stated that Henderson Judd died in July, 1871, that he was unmarried, but there were some colored people about him, whom he recognized as his children. On the 29th of March, 1871, at his request, the witness wrote for him a deed of trust, which he executed, and in which he appointed the witness and another person, trustees of the property therein conveyed, for the benefit of these colored children. The property conveyed in trust is thus described after naming and including his lands: "Also all the stock of horses and mules, cattle and hogs, and all the personal property of every description, which I, the said Henderson Judd, (418) now own or may hereafter become the owner of, up to the day and time of my death."
This witness further stated, that while he was engaged in writing the deed, Judd told him, that he wanted him, the witness, to get from Thomas, the plaintiff, this note and collect it, and if he was living to pay it over to himself, and if he was not living, to these colored children of his. Witness told Judd, that he thought that he, Judd had better get the note from Thomas. Judd said he would. Witness did not apply for the note until after the death of Judd.
The plaintiff being re-called by his counsel, was asked if he still persisted in his assertion notwithstanding the evidence offered by the defendant that the note belonged to him. He replied that he did, and that the note was his property.
Upon his cross-examination, the plaintiff stated that he had never given a cent for the note; and upon being asked whether he had any other reason to give for claiming the note, besides what he had stated on his first examination, said that he had: and was proceeding to state another conversation, which he had with his uncle in the month of April, 1871, and which was after the deed of trust was executed. To this conversation as evidence, the defendant objected, for the reason, because it was between the plaintiff and himself and a person deceased.
His Honor, upon consideration, admitted the evidence, partly because he was of opinion, that the case did not strictly come within the prohibition of Sec. 343, C. C. P., as the representative of the dead man was not a party to this suit; and it was not sought in any way to hold his estate liable on the note; and secondly, because Col. Seawell, the trustee, who claimed the note, had been examined by defendant, touching a communication between himself and the dead man in regard to the note in controversy: and again, because the defendant's counsel had *Page 319 
opened the way by the question he had himself propounded to the witness.
The plaintiff thereupon testified, that after he had seen the (419) defendant and received from him the $60.00 note on which his uncle was liable as surety, and entered the credit on the note in suit, he went back to his uncle and told him he had satisfied the debt. His uncle said, "All right, keep the note." He offered to surrender the note he had taken up; but his uncle said, "Keep it; it will show, some day, what you have done." To this the defendant excepted.
It was admitted on the trial, that one H. B. Thomas was the administrator of Henderson Judd, deceased.
The jury returned a verdict in favor of the plaintiff. Rule for a new trial; rule discharged. Judgment and appeal by defendant.
The plaintiff testified as a witness in his own behalf, of a conversation between himself and a person then deceased.
The evidence was competent, because the representative of the deceased person was not a party to the suit. C. C. P., Sec. 343.
This would entitle the plaintiff to his judgment here; but then, it is apparent that "a complete determination of the controversy cannot be had without the presence of other parties;" for, if the plaintiff recover, the representative of the deceased payee of the note may sue either the plaintiff or defendant. To prevent that, C. C. P., Sec. 65, makes it the duty of the court to have such party brought in. And yet, that would be hard upon the plaintiffs in this case, because as soon as the representative of the deceased payee is made a party it makes the plaintiff an incompetent witness, and defeats his recovery. This would be right if the representative desires to be a party, and to claim the (420) debt; but it may be that he does not desire to do so. It may be that he desires that the plaintiff shall recover. And then it would seem that he ought not to be made a party against his wish, for the benefit of the defendant. It is clear, however, that if he desires to be a party he ought to be allowed to be.
The defendant offered no evidence that he had paid the debt, and the jury found that he had not paid it. So that he owes it, either to the plaintiff or to the representative of the deceased. And if his object is to protect himself against a double liability, the same section of C. C. P., 65, provides that he may have any other claimant brought in and made a party in his place, upon his paying the money into court. And this is what he ought to have done. *Page 320 
The case will be remanded, to the end that the representative may have notice of the suit and be made a party plaintiff or defendant as he may be advised.
Affirmed and remanded. Plaintiff will have judgment in this court for his costs only.
PER CURIAM. Judgment accordingly.
Cited: Molyneux v. Huey, 81 N.C. 110; Roberts v. R. R., 109 N.C. 671.
(421)